# ORIGINAL

FILED

2009 JAN 22 AM 11: 19

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ KNK____ DEPUTY

1  ARLEN BARKSDALE, individually and
2  as Trustee of Barksdale Family Trust,
   his Living Trust
3  360 County Road 142 Box 156
   Lake City, CO 81235
   ph 970-944-2246, fax 970-944-2477

4
5  PLAINTIFF, in pro per

6
                    **FILE BY FAX**
7

8              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF CALIFORNIA   09 CV 0121 H LSP
9

| | |
|---|---|
| 10  ARLEN BARKSDALE, individually and | CASE NO. _____ |
| trustee of BARKSDALE FAMILY TRUST, | |
| 11  his Living Trust | COMPLAINT FOR |
| 12                    PLAINTIFF | 1. Breach of Contract |
|       vs. | 2. Intentional Misrepresentation |
| 13 | 3. Negligent Misrepresentation |
|     MONICA SOLSTAD | 4. Breach of Duty of Care |
| 14 | 5. Breach of Duty of Good Faith |
|     and | 6. Breach of Duty to Disclose in |
| 15 |        Business Transactions |
|     TIFFANY AYALA | 7. Fraudulent Concealment |
| 16 | 8. Fraudulent Theft/Damage of Assets |
|     and | 9. Breach of A Renter's Duty to Disclose |
| 17 | 10. Civil Conspiracy |
|     JOES 1 through 20 | 11. Aiding and Abetting Breach of |
| 18 |        Fiduciary Duty and Financial |
|                    DEFENDANTS |        Obligations |
| 19 | 12. Equitable Indemnification |
| | 13. Declaratory Relief |
| 20 | |
| 21 | Judge: _____ |
| 22 | Courtroom: _____ |
| 23 | Trial date: _____ |

24   _____

25 The PLAINTIFF, Arlen Barksdale, individually and as trustee for Barksdale

26 Family Trust, his Living Trust alleges as follows:

                        **GENERAL ALLEGATIONS**
27

28     1. The PLAINTIFF, a Colorado resident, is informed and believes and

                              -1-

1  thereon alleges that DEFENDANTS Monica Solstad and Tifany Ayala are individuals

2  who are now, and at all times mentioned herein, were residents of the County of

3  San Diego, State of California.

4      2. DEFENDANTS, JOES 1 through 20 inclusive, are sued in this Complaint

5  under such fictitious names. Their true names and capacities are unknown to

6  PLAINTIFF at this time. When their true names and capacities are ascertained,

7  PLAINTIFF will amend this Complaint by inserting their true names and

8  capacities herein. PLAINTIFF is informed and believes and thereon alleges that

9  each of the fictitiously named DEFENDANTS are responsible in some manner for

10 the occurrences alledged in this Complaint, and that PLAINTIFF's damages as

11 alledged in this Complaint were proximately caused by those DEFENDANTS.

12     3. PLAINTIFF is informed and believe and thereon alleges that each of the

13 DEFENDANTS named herein are responsible in some manner for the occurrences

14 alledged in this Complaint, and that PLAINTIFF's damages as alledged in this

15 Complaint were proximately caused by those DEFENDANTS. PLAINTIFF is further

16 informed and believe and thereon alleges that, at all times herein mentioned,

17 each of the DEFENDANTS named herein was the agent, partner, employee,

18 associate, or representative of the other DEFENDANTS, and in doing the things

19 alleged herein was acting within the scope of such agency, partnership,

20 employment, association or representation, and with the permission and consent

21 of each of the other DEFENDANTS. PLAINTIFF is further informed and believes,

22 and thereon alleges, that each of the DEFENDANTS in this Complaint gave consent

23 to, ratified, and authorized the acts alledged herein of each of the remaining

24 DEFENDANTS.

                              **JURISDICTION**

25     4. **Diversity of Citizenship**: The PLAINTIFF is informed and believe and

26 thereon alleges that, since at all times mentioned herein, the DEFENDANTS,

27 MONICA SOLSTAD, TIFFANY AYALA, AND JOES 1 THROUGH 20, are residents of the City

28 of Vista, County of San Diego, State of California and that the PLAINTIFF Arlen

-2-

Barksdale, individually and as trustee Barksdale Family Trust, his Living Trust was, and is, a resident of the Town of Lake City, County of Hinsdale, State of Colorado since 2004, then diversity of citizenship exists and so proper personal jurisdiction lies with this instant Federal Court for the Southern District of California.

5. **Subject Matter Jurisdiction:** The PLAINTIFF is further informed and believes and thereon alleges that, since at all times mentioned herein, that the contractual lease document relied upon, and attached to this complaint, is executed in the County of San Diego, State of California and furthermore the damage claim is greater that $75,001.00, thus proper 'subject matter' jurisdiction also lies with this instant Federal Court for the Southern District of California.

### STATEMENT OF FACTS

6. On or about  September 5, 2007 the DEFENDANTS opened discussions with the  PLAINTIFF with regards to establishing a residential lease agreement for the premises located at 1136 Lime Place, Vista, California 92083. The DEFENDANTS provided financial information purportedly of substantial enough nature to take care of the obligations of monthly payments as well as any future repairs to electrical, plumbing, etc. to the premises owned by the DEFENDANT. The DEFENDANTS Tiffany Ayala and her purported mother Monica Solstad alleged that  they had full financial capability to negotiate and execute the said lease on the premises and to be fully capable of paying all indebtedness incurred therein. Said lease executed September 6, 2007 and attached hereto as Exhibit A.

7. At the earliest dates of discussions the PLAINTIFF was not made aware of the complete severity of the DEFENDANTS' financial distress nor a financially shaky income posture nor any other pending obligations that they were embroiled in. It was not until after PLAINTIFF incurred 'touch-up' remodel expenses, HVAC replacement & plumbing problem that some, but not all, of the

-3-

"hidden" problems with the DEFENDANTS weak finacial condition and lack of maintenance came to light. The DEFENDANTS were the proximate cause of a saturated septic system due to running too much water and unapproved 'products' into the plumbing. It became apparent that they did not know, understand or care to follow the instructions in the lease document as to care and control of the plumbing system. Further it also became known that they did, in fact, not have the financial wherewithal to repair said plumbing in accordance with the agreed provisions of the lease agreement. To this day no payment of the incurred plumbing expenses or HVAC have been proferred. Said plumbing expenses quickly became extensive as the system was pumped and treated several times in attempts to dislodge the obstructions. In early April, the entire system was replaced at an enormous cost - with no payments from the DEFENDANTS. In fact, the DEFENDANT paid all associated costs even though the lease agreement required such of the DEFENDANTS.

8. Following the inception of the major repair work in the first week of April, 2008 the DEFENDANTS, on or about April 15, 2008 while in default on the lease agreement, did not pay their past nor current month's rent, and moved out of the premises without a negotiated settlement of monies due and owing by virtue of the said agreement leaving the premises untenable for several months.

9. Also the inspection following the departue of the DEFENDANTS from the premises, repeated disasters from hidden, undisclosed 'land mines' were discovered; to wit, a broken built-in appliance and a severely damaged flooring, that was recently newly installed, as well as a "flapper' valve in a commode that was responsible, in large part, for the saturated septic. The PLAINTIFF had to shoulder these additional, onerous expenses to repair the appliance and install new flooring, again.

10. Although the PLAINTIFF purchased the rental premises with a garage conversion in place, the DEFENDANTS agressively and with malice claimed the conversion was not documented and there was mold damage. Although the

-4-

1   inspection department said it was to code and could see no mold, there was an

2   unconnected outside garage and would allow it to be permitted, the time

3   required would further deepen the losses from absent rental revenues. So the

4   PLAINTIFF again shouldered an onerous burden of demolishing the garage

5   searching for the ultimately non-existant mold, reconstructing the garage at

6   the PLAINTIFF's own expense proximately caused by the DEFENDANTS.

7        11. In spite of repeated requests made by the PLAINTIFF on the DEFENDANTS

8   to pay their rent and step up to the plate on at least some of the utility

9   repair, flooring repair, remodel expenses and appliance repair, the DEFENDANTS

10   pleaded insolvency and lack of income or reserves, even to the extent that they

11   'borrowed' money from a family member. Then moved into a grandfather's home

12   where no rent was required. The PLAINTIFF soon realized that the financial

13   wherewithal of the DEFENDANTS never realistically existed in the first place

14   and was a sham to entice him into executing a lease situation with them. The

15   DEFENDANTS were, and at all times, overextended and was simply a fraudulent

16   misrepresentation by the DEFENDANTS that was relied upon by the PLAINTIFF in

17   the lease transaction.

18        12. Following a failure of a course of discussions and small claims

19   actions since last April of 2008 to settle matters to everyone's satisfaction,

20   the PLAINTIFF is pursuing this instant action to resolve such issues. The

21   PLAINTIFF at onerous expense has made and is continuing to make costly cross

22   country trips from Colorado to California.

23                    **FIRST CAUSE OF ACTION**

24                       **BREACH OF CONTRACT**

25             **(PLAINTIFF V. ALL DEFENDANTS)**

26        13. PLAINTIFF incorporates each and every preceding paragraph of this

27   Complaint as if fully set forth herein.

28        14. DEFENDANTS have materially breached the contractual lease agreement

set forth in the exhibit of the Complaint, including but not limited to, to wit: the DEFENDANTS falsely assured the PLAINTIFF they had good jobs, good income; good reserves; yet such payments needed pursuant to the lease contract payments were never tendered; the DEFENDANTS' financial assertions were falsified and misleading and they failed to perform as promised over the full term of the lease; and further the DEFENDANTS failed to comply with their agreement to maintain the appliances, flooring, and plumbing as usual in good and workmanlike condition paying all repairs.

15. PLAINTIFF performed all of the terms of the executed lease contract within their power until thwarted by the unexpected bad faith acts, ommissions and falsehood of the DEFENDANTS.

16. As a result of these material breaches, the PLAINTIFF have been damaged in excess of $75,000.00 dollars, said amount to be shown at trial.

## SECOND CAUSE OF ACTION

### INTENTIONAL MISREPRESENTATION

### (PLAINTIFF V. ALL DEFENDANTS)

17. PLAINTIFF incorporates each and every preceding paragraph of this Complaint as if fully set forth herein.

18.   DEFENDANTS, and each of them, falsely represented to the PLAINTIFF, as Landlord, material information related to the PLAINTIFF's true financial condition.

19. DEFENDANTS, jointly and severally, and each of them, had knowledge of the falsity of their representations regarding their ability to pay rents.

20. DEFENDANTS, jointly and severally, and each of them had the intent to deceive the PLAINTIFF (landlord) of the real material value of their income, expenses and ability to fulfill the transaction (lease).

21. The PLAINTIFF (landlord) justifiably relied on the false representations of the DEFENDANTS regarding the transaction, and as a result,

-6-

turned down other applicants who were, in reality, fully qualified where the DEFENDANTS, in fact, were not qualified.

22. As a result of the PLAINTIFF's reliance, the PLAINTIFF suffered damages, in that they were robbed of the PLAINTIFF's most valuable asset, the income from the rental Lease and left with only a worthless, unpaid Lease with overwhelming debts for repairs.

## THIRD CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

### (PLAINTIFF V. ALL DEFENDANTS)

23. PLAINTIFF incorporates each and every preceding paragraph of this Complaint as if fully set forth herein.

24. DEFENDANTS, and each of them, as applicants for a Lease on the rental premises owed the PLAINTIFF a duty to provide all material and relevant information regarding their financial solvency in the transaction.

25. DEFENDANTS, jointly and severally, and each of them, made representations regarding the transaction without providing researched documentation regarding their financial capabilities, and thus made negligent assertions to the landlord.

26. DEFENDANTS, jointly and severally, and each of them, intended for the PLAINTIFF to approve the transaction for the lease of the rental premises.

27. The DEFENDANTS, jointly and severally, and each of them, had knowledge that the PLAINTIFF  would rely on their representations in the execution of said rental lease.

28. As a result of the PLAINTIFF's reliance, the PLAINTIFF suffered damages, in that he was robbed of the PLAINTIFF's most valuable asset, the income from the rental Lease and left with only a worthless, unpaid Lease with overwhelming debts for repairs.

## FOURTH CAUSE OF ACTION

### BREACH OF DUTY OF CARE

#### (PLAINTIFF V. ALL DEFENDANTS)

29. PLAINTIFF incorporates each and every preceding paragraph of this Complaint as if fully set forth herein.

30. The DEFENDANTS, as rentors and occupants of the said rental property, and as such owe the landlord a duty of care.

31. The duty of care requires the DEFENDANTS take care of the premises with a standard of care commensurate with the Lease Agreement, including but not limited to the type of waste disposed of into the septic system and to maintain the plumbing , including the septic, as part and parcel of their caretaking obligations.

32. As a result of the DEFENDANTS' breaches of their duty of care, the PLAINTIFF sustained damages, in that the PLAINTIFF had to completely replace the septic system prior to normal replacement time.


## FIFTH CAUSE OF ACTION

### BREACH OF DUTY OF GOOD FAITH

#### (PLAINTIFF V. ALL DEFENDANTS)

33. PLAINTIFF incorporates each and every preceding paragraph of this Complaint as if fully set forth herein.

34. The DEFENDANTS, as rentors and signees of the accompanying lease owe the PLAINTIFF a duty of good faith.

35. The duty of good faith requires the DEFENDANTS as renters and signors of the accompanying lease to make financial disclosures to the PLAINTIFF (landlord) which can only be attributed to a rational, sound rental purpose as well as being an accurate reflection of the financial state of the DEFENDANT's business affairs affecting the soundness of their ability to

discharge their financial obligation, vis-a-vis, said contractual lease
agreement.

36. The DEFENDANTS, and each of them, breached their duty of good faith
to the PLAINTIFF when they were able to consummate the transaction (lease)
through innuendo, disinformation and prevarication.

**SIXTH CAUSE OF ACTION**

**BREACH OF DUTY TO DISCLOSE IN BUSINESS TRANSACTIONS**

**(PLAINTIFF V. ALL DEFENDANTS)**

37. PLAINTIFF incorporates each and every preceding paragraph of this
Complaint as if fully set forth herein.

38. DEFENDANTS were aware that they as rentors were about to enter into
a lease contract transaction without disclosing full knowledge regarding their
true financial conditions.

39. The PLAINTIFF reasonably expected the DEFENDANTS as rent applicants
to disclose all facts material to their financial ability to enter a lease
transaction.

40. As a result of this failure to disclose the material facts
surrounding the DEFENDANT's financial condition and ability to discharge the
obligations of the lease contract, then the PLAINTIFF, in reliance on
partially false information, approved the lease transaction.

41. As a result of the transaction the PLAINTIFF (landlord) sustained
damages, in that he was robbed of the lease premises' most valuable asset,
that being its lease income, and extraordinary repair expenses which were the
responsibility of the DEFENDANTS as renters.

**SEVENTH CAUSE OF ACTION**

**FRAUDULENT CONCEALMENT**

**(PLAINTIFF V. ALL DEFENDANTS)**

-9-

42. PLAINTIFF incorporates each and every preceding paragraph of this Complaint as if fully set forth herein.

43. DEFENDANTS, and each of them, vis-a-vis their fiduciary responsibilty through the executed lease contract on the premises, owe a duty to disclose all material facts, including but not limited to financial ability to discharge obligations of the lease.

44. DEFENDANTS, and each of them, concealed material facts concerning their assets, their gross income, their expenses, and their net income, their liabilities, their ability to execute constituted contractual obligations, such as repairs and rent, from the landlord.

45. DEFENDANTS, jointly and severally, and each of them, concealed material facts regarding the lease transaction with the intent to defraud the PLAINTIFF.

46. The PLAINTIFF (landlord) was unaware of all material facts surrounding lease transaction and would not have approved said lease if all material facts were known.

47. As a result of the transaction the PLAINTIFF (landlord) sustained damages, in that he was robbed of the lease premises' most valuable asset, that being its lease income, and extraordinary repair expenses which were the responsibility of the DEFENDANTS as renters.

### EIGTH CAUSE OF ACTION

#### FRAUDULENT THEFT/DAMAGE OF ASSETS

#### (PLAINTIFF V. ALL DEFENDANTS)

48. PLAINTIFF incorporates each and every preceding paragraph of this Complaint as if fully set forth herein.

49. DEFENDANTS damaged the flooring without replacing it, damaged the plumbing system without replacing it and further damaged the oven door without replacing it.

-10-

50. DEFENDANTS, jointly and severally, and each of them, concealed material facts regarding the theft/damage with the intent to defraud the PLAINTIFF and rob him of material value and the wherewithal to operate the business of leasing the premises.

51. As a result of the theft/damage and concealment thereof, the PLAINTIFF (landlord) sustained damages, in that he was robbed of the lease premises' most valuable asset, that being its lease income, and extraordinary repair expenses which were the responsibility of the DEFENDANTS as renters.

### NINTH CAUSE OF ACTION

### BREACH OF A RENTER'S DUTY TO DISCLOSE

### (PLAINTIFF V. ALL DEFENDANTS)

52. PLAINTIFF incorporates each and every preceding paragraph of this Complaint as if fully set forth herein.

53. DEFENDANTS, and each of them, are all rentors of the lease premises and signatories to the lease Contract and responsible to the PLAINTIFF for its attendant financial obligations, and as such were under a duty to disclose all information material to their ability to discharge their obligations under the terms of the transaction.

54. DEFENDANTS, jointly and severally, and each of them, failed to disclose all material information known to them regarding their financial ability to discharge the obligations of the lease transaction, both in monthly payments as well as repairs.

55. As a result of the DEFENDANT's failure to disclose, the PLAINTIFF (landlord) sustained damages, in that he was robbed of his most valuable asset, that being the lease income from the said premises, as well as the extraordinary repair expenses which were the responsibility of the DEFENDANTS as renters.

### TENTH CAUSE OF ACTION

CIVIL CONSPIRACY

(PLAINTIFF V. ALL DEFENDANTS)

56. PLAINTIFF incorporates each and every preceding paragraph of this Complaint as if fully set forth herein.

57. DEFENDANTS, jointly and severally, and each of them, conspired with each other to falsely report their financial net worth and income in order to defraud the landlord by leaving only a mountain of debt and no offsetting contractural lease income.

58. The DEFENDANTS, and each of them, had knowledge of the conspiracy and its unlawful purpose.

59. DEFENDANTS, and each of them, committed wrongful acts of breaches of fiduciary duty, and fraud, in furtherance of the conspiracy.

60. As a result of the DEFENDANTS' conspiracy, the PLAINTIFF suffered damage in that he was robbed of his most valuable asset in the lease income, left with mountainous debts owing to a falsified ability to pay  and furthermore such conspiracy by the DEFENDANTS prevented the PLAINTIFF from bringing to market at any reasonable timeframe the viable revenue producing service of the lease premises.


**ELEVENTH CAUSE OF ACTION**

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND FINANCIAL OBLIGATIONS**

**(PLAINTIFF V. ALL DEFENDANTS)**

61. PLAINTIFF incorporates each and every preceding paragraph of this Complaint as if fully set forth herein.

62. DEFENDANTS, as executors of the said lease contract owe the PLAINTIFF fiduciary and financial duties.

63. DEFENDANTS breached their fiduciary and financial duties by failing to disclose material information regarding the negotiation of the lease transaction and approving a sham transaction to defraud the PLAINTIFF.

64. DEFENDANTS, jointly and severally, as executors of the said lease contract knowingly and substantially participated and assisted in DEFENDANT's breach of fiduciary and financial duties, and therefore aided and abetted such breaches of fiduciary and financial duties described above knowingly failed to disclose material information to the PLAINTIFF regarding the negotiation and consummation of said lease transaction, the true nature of their assets, liabilities, and net income available for debt service and repair reserves to comply with rent payment and repair clauses of said contract in furtherance of breaches of fiduciary and financial duty.

65. As a result of the DEFENDANTS' aiding and abetting breach of fiduciary and financial duty, the PLAINTIFF suffered damage in that he was robbed of his most valuable asset in the lease income, left with mountainous debts owing to a falsified ability to pay and furthermore such aiding and abetting by the DEFENDANTS prevented the PLAINTIFF from bringing to market at any reasonable timeframe the viable revenue producing service of the lease premises.

### TWELFTH CAUSE OF ACTION

#### EQUITABLE INDEMNIFICATION

#### (PLAINTIFF V. ALL DEFENDANTS)

66. PLAINTIFF incorporates each and every preceding paragraph of this Complaint as if fully set forth herein.

67. The DEFENDANTS have denied the PLAINTIFF the ability to peaceably run the business of leasing the said premises as a rental property, denied them the opportunity to sublease or fully lease the premises, caused enormous damage and unpaid repair bills, did not in good faith negotiate a release from the lease to allow timely re-lease of the premises, was not truthful about finances which proximately caused severe financial drain to the PLAINTIFF, denied him the knowledge of their shaky financial condition causing vacation of the premises

-13-

and unpaid plumbing bills and damaged conditions of the premises.

68. Further, the PLAINTIFF was caused by the actions of the DEFENDANTS to have to make multiple, unscheduled trips from his home in Colorado to California to deal with the failure of the DEFENDANTS to make repairs and to appear at various legal proceedings, including these herein.

69. In summary, rather than being truthful about their assets, net worth, true liabilities and disposable cash flow, the DEFENDANTS have directly and indirectly caused the demise of the lease business to the PLAINTIFF' detriment and to the betterment of the DEFENDANTS.

70. Equity demands that the DEFENDANTS reimburse the PLAINTIFF for all damages, attorney's fees, and costs incurred as a result of actions alledged herein.

### THIRTEENTH CAUSE OF ACTION

#### DECLARATORY RELIEF

#### (PLAINTIFF V. ALL DEFENDANTS)

71. PLAINTIFF incorporates each and every preceding paragraph of this Complaint as if fully set forth herein.

72. An actual controversy has arisen and now exists among the parties by reason of the foregoing, and it would be equitable for the Court to determine the relative rights and obligations of the parties to this proceeding.

73. Declaratory relief is necessary and appropriate so that the PLAINTIFF might determine his rights and duties.

### PRAYER

WHEREFORE, PLAINTIFF, Arlen Barksdale, individually and as trustee for Barksdale Family Trust, his Living Trust prays for judgement as follows:

1. For monetary compensatory damages in the amount according to proof at trial;

2. For liquidation damages;

3. For punitive damages according to proof of fraud at trial;

4. For nominal damages;

5. For equitable indemnification;

6. For contribution;

7. For exemplary damages to discourage similar crimes;

8. For PLAINTIFF's cost for onerous travel expenses from Colorado to California estimated at $1000.00 per trip or based on the time and travel and per diem expenses computed from the applicable published Federal IRS tables;

9. For PLAINTIFF's cost of suit herein, including reasonable attorney's fees; and

10. For a total sum of $75,001.00 or the amount according to proof at trial;

11. For such other and further relief as the court may deem just and proper.

Dated: January 20, 2009

_Arlen Barksdale_

_____

Arlen Barksdale, individually and

as trustee Barksdale Family Trust

PLAINTIFF, in pro per

Appendix A

## RESIDENTIAL LEASE AGREEMENT

**THIS LEASE AGREEMENT** (hereinafter referred to as the "Agreement") made and entered into this _6_ day of _Sept_, 2007 by and between Phyllis Mabbett whose address is 1968 Circle Park Lane, Fucialitas, CA 92024 (hereinafter referred to as "Landlord") and Tiffany Ayala (hereinafter referred to as "Tenant").
_Trustee Barksdale Family Trust_

**WITNESSETH:**

WHEREAS, Landlord is the fee owner of certain real property being, lying and situated in San Diego County, California, such real property having a street address of 1136 Lime Place, Vista, CA 92083

WHEREAS, Landlord is desirous of leasing the Premises to Tenant upon the terms and conditions as contained herein; and

WHEREAS, Tenant is desirous of leasing the Premises from Landlord on the terms and conditions as contained herein;

NOW, THEREFORE, for and in consideration of the covenants and obligations contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1. **TERM.** The term begins on October 1, 2007
   ___ A. Month-to-Month: and shall continue as a month-to-month tenancy. Tenant may terminate the tenancy by giving written notice at least 30 days prior to the intended termination date. Landlord may terminate the tenancy by giving written notice as provided by law. Such notices may be given on any date.

   _X_ B. Lease: and shall terminate on ___ September 30, 2008 at 12:01 AM. Tenant shall vacate the Premises upon termination of the Agreement, unless: (i) Landlord and Tenant have extended this Agreement in writing or signed a new agreement; (ii) mandated by local rent control law; or (iii) Landlord accepts Rent from Tenant (other than past due Rent), in which case a month-to-month tenancy shall be created which either party may terminate as specified in paragraph 1A. Rent shall be at a rate agreed to by Landlord and Tenant, or as allowed by law. All other terms and conditions of this Agreement shall remain in full force and effect.
   At the end of the first lease period, the tenant will have an option to renew for another year with a rent adjustment based on the consumer price index for the preceding year.

2. **RENT.** "Rent" is defined as all monetary obligations of Tenant to Landlord under the terms of the Agreement, except the Damage Deposit. Tenant shall pay $2000.00 per month for the Term of the Agreement. Rent is payable in advance on the 1st day of each calendar month and is delinquent on the next day. If Commencement Date falls on any day other than the day Rent is payable under this paragraph, and Tenant has paid one full month's Rent in advance of Commencement Date, Rent for the second calendar month shall be prorated based on a 30-day period.

   Tenant shall pay Rent to Landlord by the following: _X_ personal check, ___ money order, ___ cashier's check; or ___ other to Desmon Properties or Phyllis Mabbett at PO Box 231758 Encinitas CA 92023 (or at any other location subsequently specified by Landlord in writing to Tenant).
   If any payment is returned for non-sufficient funds ("NSF") or because Tenant stops payment, then, after that: (i) Landlord may, in writing, require Tenant to pay Rent in cash for three months, and (ii) all future Rent shall be paid by Tenant by the following: ___ money order _X_ cashier's check.

3. **DAMAGE DEPOSIT.** Upon the due execution of this Agreement, Tenant shall deposit with Landlord the sum of Two thousand DOLLARS ($2000.00) receipt of which is hereby acknowledged by Landlord, as security for any damage caused to the Premises during the term hereof. Such deposit shall be returned to Tenant, without interest, and less any set off for damages to the Premises upon the termination of this Agreement.

4. **USE OF PREMISES.** The Premises shall be used and occupied by Tenant and Tenant's immediate family, consisting of and Tiffany Ayalas, her four children and her mother Monica Solstad as a private single family dwelling, and no part of the Premises shall be used at any time during the term of this Agreement by Tenant for the purpose of carrying on any business, profession, or trade of any kind, or for any purpose other than as a private single family dwelling. Tenant shall not allow any other person, other than Tenant's immediate family or transient relatives and friends who are guests of Tenant, to use or occupy the Premises without first obtaining Landlord's written consent to such use. Tenant shall comply with any and all laws, ordinances, rules and orders of any and all governmental or quasi-governmental authorities affecting the cleanliness, use, occupancy and preservation of the Premises.

5. **CONDITION OF PREMISES.** Tenant stipulates, represents and warrants that Tenant has examined the Premises, and that they are at the time of this Lease in good order, repair, and in a safe, clean and tenantable condition.

Tenants: _____   Landlord or Landlord's Representative: _____   Page 1 of 6

01/20/2009  05:05   7605340967   MINUTEMAN PRESS ENC1   PAGE  01

6. **ASSIGNMENT AND SUB-LETTING.** Tenant shall not assign this Agreement, or sublet or grant any license to use the Premises or any part thereof without the prior written consent of Landlord. A consent by Landlord to one such assignment, sub-letting or license shall not be deemed to be a consent to any subsequent assignment, sub-letting or license. An assignment, sub-letting or license without the prior written consent of Landlord, or an assignment or sub-letting by operation of law shall be absolutely null and void and shall, at Landlord's option, terminate this Agreement.

7. **ALTERATIONS AND IMPROVEMENTS.** Tenant shall make no alterations to the buildings or improvements on the Premises or construct any building or make any other improvements on the Premises without the prior written consent of Landlord. Any and all alterations, changes, and/or improvements built, constructed or placed on the Premises by Tenant shall, unless otherwise provided by written agreement between Landlord and Tenant, be and become the property of Landlord and remain on the Premises at the expiration or earlier termination of this Agreement.

8. **NON-DELIVERY OF POSSESSION.** In the event Landlord cannot deliver possession of the Premises to Tenant upon the commencement of the Lease term, through no fault of Landlord or its agents, then Landlord or its agents shall have no liability, but the rental herein provided shall abate until possession is given. Landlord or its agents shall have thirty (30) days in which to give possession, and if possession is tendered within such time, Tenant agrees to accept the demised Premises and pay the rental herein provided from that date. In the event possession cannot be delivered within such time, through no fault of Landlord or its agents, then this Agreement and all rights hereunder shall terminate.

9. **HAZARDOUS MATERIALS.** Tenant shall not keep on the Premises any item of a dangerous, flammable or explosive character that might unreasonably increase the danger of fire or explosion on the Premises or that might be considered hazardous or extra hazardous by any responsible insurance company.

10. **UTILITIES.** Tenant shall be responsible for paying for utility services (electricity, water and trash pick-up) required on the Premises.

11. **MAINTENANCE AND REPAIR; RULES.** Tenant will, at its sole expense, keep and maintain the Premises and appurtenances in good and sanitary condition and repair during the term of this Agreement and any renewal thereof. Without limiting the generality of the foregoing, Tenant shall:

   (a) Not obstruct the driveways, sidewalks, courts, entry ways, stairs and/or halls, which shall be used for the purposes of ingress and egress only. Driveway in front of double gate to remain clear for landlord access to rear of property.

   (b) Keep all windows, glass, window coverings, doors, locks and hardware in good, clean order and repair;

   (c) Not obstruct or cover the windows or doors;

   (d) Not leave windows or doors in an open position during any inclement weather;

   (e) Not hang any laundry, clothing, sheets, etc. from any window, rail, porch or balcony nor air or dry any of same within any yard area or space;

   (f) Not cause or permit any locks or hooks to be placed upon any door or window without the prior written consent of Landlord;

   (g) Keep all heating filters clean and free from dirt;

   (h) Responsible for maintenance of appliances provided, i.e. kitchen stove.

   (i) Keep all lavatories, sinks, toilets, and all other water and plumbing apparatus in good order and repair and shall use same only for the purposes for which they were constructed. Tenant shall not allow any sweepings, rubbish, sand, rags, ashes or other substances to be thrown or deposited therein. Any damage to any such apparatus and the cost of clearing stopped plumbing resulting from misuse shall be borne by Tenant;

   (j) And Tenant's family and guests shall at all times maintain order in the Premises and at all places on the Premises, and shall not make or permit any loud or improper noises, or otherwise disturb other residents;

   (k) Keep all radios, television sets, stereos, phonographs, etc., turned down to a level of sound that does not annoy or interfere with other residents;

   (l) Deposit all trash, garbage, rubbish or refuse in the locations provided therefore and shall not allow any trash, garbage, rubbish or refuse to be deposited or permitted to stand on the exterior of any building or within the common elements;

mantar TK, MS _____   _____    Landlord or Landlord's Representative: PM   al    Page 2 of 6

(n) Be responsible for internal and external pest control.

(o) Must ensure that no cloth or paper products or tissues (toilet paper) are flushed down the toilet. (This includes paper towels and Q-tips which can ruin the property and the plumbing.)

(p) Is responsible for remote control unit for heating unit in apartment. If lost, a $500 replacement fee will be assessed.

(p) Must keep all outside drains open and free from leaves and debris to facilitate water drainage away from outside of house. Due to the location of the property, this requires special attention during periods of heavy rain.

(q) Abide by and be bound by any and all rules and regulations affecting the Premises or the common area appurtenant thereto which may be adopted or promulgated by the Condominium or Homeowners' Association having control over them.

12. **DAMAGE TO PREMISES.** In the event the Premises are destroyed or rendered wholly untenantable by fire, storm, earthquake, or other casualty not caused by the negligence of Tenant, this Agreement shall terminate from such time except for the purpose of enforcing rights that may have then accrued hereunder. The rental provided for herein shall then be accounted for by and between Landlord and Tenant up to the time of such injury or destruction of the Premises, Tenant paying rentals up to such date and Landlord refunding rentals collected beyond such date. Should a portion of the Premises thereby be rendered untenantable, the Landlord shall have the option of either repairing such injured or damaged portion or terminating this Lease. In the event that Landlord exercises its right to repair such untenantable portion, the rental shall abate in the proportion that the injured parts bears to the whole Premises, and such part so injured shall be restored by Landlord as speedily as practicable, after which the full rent shall recommence and the Agreement continue according to its terms.

13. **INSPECTION OF PREMISES.** Landlord and Landlord's agents shall have the right at all reasonable times during the term of this Agreement and any renewal thereof to enter the Premises for the purpose of inspecting the Premises and all buildings and improvements thereon. And for the purposes of making any repairs, additions or alterations as may be deemed appropriate by Landlord for the preservation of the Premises or the building. Landlord and its agents shall further have the right to exhibit the Premises and to display the usual "for sale", "for rent" or "vacancy" signs on the Premises at any time within forty-five (45) days before the expiration of this Lease. The right of entry shall likewise exist for the purpose of removing placards, signs, fixtures, alterations or additions, but do not conform to this Agreement or to any restrictions, rules or regulations affecting the Premises.

14. **SUBORDINATION OF LEASE.** This Agreement and Tenant's interest hereunder are and shall be subordinate, junior and inferior to any and all mortgages, liens or encumbrances now or hereafter placed on the Premises by Landlord, all advances made under any such mortgages, liens or encumbrances (including, but not limited to, future advances), the interest payable on such mortgages, liens or encumbrances and any and all renewals, extensions or modifications of such mortgages, liens or encumbrances.

15. **TENANT'S HOLD OVER.** If Tenant remains in possession of the Premises with the consent of Landlord after the natural expiration of this Agreement, a new tenancy from month-to-month shall be created between Landlord and Tenant which shall be subject to all of the terms and conditions hereof except that rent shall then be due and owing at an adjusted rate which will be equal to the rent plus an increase based on the consumer price index of the preceding year.

16. **SURRENDER OF PREMISES.** Upon the expiration of the term hereof, Tenant shall surrender the Premises in as good a state and condition as they were at the commencement of this Agreement, reasonable use and wear and tear thereof and damages by the elements excepted.

17. **PETS.** Unless otherwise provided in California Civil Code § 54.2, Tenant shall keep no animal or pet on or about the Premises without Landlord's prior written consent, with the exception of: _Lizard kept in glass tank._

18. **QUIET ENJOYMENT.** Tenant, upon payment of all of the sums referred to herein as being payable by Tenant and Tenant's performance of all Tenant's agreements contained herein and Tenant's observance of all rules and regulations, shall and may peacefully and quietly have, hold and enjoy said Premises for the term hereof.

19. **INDEMNIFICATION.** Landlord shall not be liable for any damage or injury of or to the Tenant, Tenant's family, guests, invitees, agents or employees or to any person entering the Premises or the building of which the Premises are a part or to goods or equipment, or in the structure or equipment of the structure of which the Premises are a part, and Tenant hereby agrees to indemnify, defend and hold Landlord harmless from any and all claims or assertions of every kind and nature.

Tenants: _____   Landlord or Landlord's Representative: _____   Page 3 of 6

20. **DEFAULT.** If Tenant fails to comply with any of the material provisions of this Agreement, other than the covenant to pay rent, or of any present rules and regulations or any that may be hereafter prescribed by Landlord, or materially fails to comply with any duties imposed on Tenant by statute, within seven (7) days after delivery of written notice by Landlord specifying the non-compliance and indicating the intention of Landlord to terminate the Lease by reason thereof, Landlord may terminate this Agreement. If Tenant fails to pay rent when due and the default continues for seven (7) days thereafter, Landlord may, at Landlord's option, declare the entire balance of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to Landlord at law or in equity or may immediately terminate this Agreement.

21. **LATE CHARGE.** In the event that any payment required to be paid by Tenant hereunder is not made within three (3) days of when due, Tenant shall pay to Landlord, in addition to such payment or other charges due hereunder, a "late fee" in the amount of tow hundred dollars ($200.00) or 10.00% of the monthly rental fee.

22. **ABANDONMENT.** If at any time during the term of this Agreement Tenant abandons the Premises or any part thereof, Landlord may, at Landlord's option, obtain possession of the Premises in the manner provided by law, and without becoming liable to Tenant for damages or for any payment of any kind whatever. Landlord may, at Landlord's discretion, as agent for Tenant, relet the Premises, or any part thereof, for the whole or any part thereof, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such reletting, and, at Landlord's option, hold Tenant liable for any difference between the rent that would have been payable under this Agreement during the balance of the unexpired term, if this Agreement had continued in force, and the net rent for such period realized by Landlord by means of such reletting. If Landlord's right of reentry is exercised following abandonment of the Premises by Tenant, then Landlord shall consider any personal property belonging to Tenant and left on the Premises to also have been abandoned, in which case Landlord may dispose of all such personal property in any manner Landlord shall deem proper and Landlord is hereby relieved of all liability for doing so.

23. **ATTORNEYS' FEES.** Should it become necessary for Landlord to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of rentals or gaining possession of the Premises, Tenant agrees to pay all expenses so incurred, including a reasonable attorneys' fee.

24. **RECORDING OF AGREEMENT.** Tenant shall not record this Agreement on the Public Records of any public office. In the event that Tenant shall record this Agreement, this Agreement shall, at Landlord's option, terminate immediately and Landlord shall be entitled to all rights and remedies that it has at law or in equity.

25. **GOVERNING LAW.** This Agreement shall be governed, construed and interpreted by, through and under the Laws of the State of California.

26. **SEVERABILITY.** If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

27. **BINDING EFFECT.** The covenants, obligations and conditions herein contained shall be binding on and inure to the benefit of the heirs, legal representatives, and assigns of the parties hereto.

28. **DESCRIPTIVE HEADINGS.** The descriptive headings used herein are for convenience of reference only and they are not intended to have any effect whatsoever in determining the rights or obligations of the Landlord or Tenant.

29. **CONSTRUCTION.** The pronouns used herein shall include, where appropriate, either gender or both, singular and plural.

30. **NON-WAIVER.** No indulgence, waiver, election or non-election by Landlord under this Agreement shall affect Tenant's duties and liabilities hereunder.

31. **MODIFICATION.** The parties hereby agree that this document contains the entire agreement between the parties and this Agreement shall not be modified, changed, altered or amended in any way except through a written amendment signed by all of the parties hereto.

32. **NOTICE.** Any notice required or permitted under this Lease or under state law shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:

If to Landlord to: P.O. Box 156  Lake City, CO 81235          If to Tenant to:

Tenants: TA , MLS          Landlord or Landlord's Representative: PM  ab          Page 4 of 6

- 19 -

[Landlord's Name] _____ [Tenant's Name] _____

[Landlord's Address] _____ [Tenant's Name] _____

Landlord and Tenant shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

33. **DATABASE DISCLOSURE; NOTICE.** The California Department of Justice, sheriff's departments, police departments serving jurisdictions of 200,000 or more, and many other local law enforcement authorities maintain for public access a database of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of Section 290.4 of the Penal Code. The data base is updated on a quarterly basis and a source of information about the presence of these individuals in any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line through which inquiries about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. Information regarding neighborhoods is not available through the "900" telephone service. Additional information about sex offenders may be displayed on the Internet at http://www.meganslaw.ca.gov.

34. **JOINT AND INDIVIDUAL OBLIGATIONS.** If more than one Tenant signs this Agreement, each one shall be individually and completely responsible for the performance of all obligations of the Tenant under this Agreement, jointly with every other Tenant, and individually, irrespective of whether such Tenant is in possession.

35. **FOREIGN LANGUAGE NEGOTIATION.** If Landlord and Tenant have negotiated this Agreement primarily in Chinese, Tagalog, Korean, or Vietnamese, pursuant to the California Civil Code, Landlord shall provide Tenant a translation of this Agreement in the language used for the negotiation.

36. **ADDITIONAL PROVISIONS; DISCLOSURES.** _____
Household waste is disposed through a septic tank system. Tenant must be aware that this system cannot be over-loaded. It functions well with normal usage. _____

During periods of heavy rain, outside drains must be kept open to prevent water backing up on driveway and causing damage.

[Landlord should note above any disclosures about the premises that may be required under Federal or California law, such as known lead-based paint hazards in the Premises. The Landlord should also disclose any flood hazards.]

As to Landlord this 6th day of _September_, 20 07.

**LANDLORD ("LANDLORD"):**

Sign: _Barksdale Family Trust_     Print: _ARLEN BARKSDALE_
                                           Trustee

**LANDLORD ("LANDLORD"):**

Sign: _____     Print: _PHYLLIS MABBETT_
                                           Trustee

As to Tenant, this 6th day of _September_, 20 07.

**TENANT ("TENANT"):**

Sign: _____     Print: _Tiffany Ayala_

**TENANT ("TENANT"):**

Sign: _Monica L. Solstad_     Print: _Monica L Solstad_

**TENANT ("TENANT"):**

Tenants: _JK, MG_     Landlord or Landlord's Representative: _PM   at_     Page 5 of 6

- 20 -

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 159234   —   TC**

**January 22, 2009**
**11:18:23**

**Civ Fil Non-Pris**
USAO #.: 09CV0121
Judge..: MARILYN L HUFF
Amount.:                          $350.00 CK
Check#.: 011836

**Total—>   $350.00**

FROM: BARKSDALE VS SOLSTAD



ORIGINAL

FILED
2009 JAN 22 AM 11:17
FILE BY FAX

'09 CV 0121 H LSP

(c) Attorney's (Firm Name, Address, and Telephone Number)
in pro per, 860 County rd 142 Box 156, Lake City, CO 81235 ph 760-533-8714

County of Residence of First Listed Plaintiff   San Diego

County of Residence of First Listed Defendant   San Diego

## II. BASIS OF JURISDICTION

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question
☒ 4 Diversity

## III. CITIZENSHIP OF PRINCIPAL PARTIES

Citizen of This State  PTF ☐1  DEF ☒1
Citizen of Another State  PTF ☒2  DEF ☐2
Citizen or Subject of a Foreign Country  ☐3 ☐3

## IV. NATURE OF SUIT

☒ 150 Recovery of Overpayment & Enforcement of Judgment
☒ 190 Contract

## V. ORIGIN

☒ 1 Original Proceeding

## VI. CAUSE OF ACTION

41 USC et seq, Cal Civ code 1161 et seq, contracts, 18USC1001, 9Exch341, UCC2-715, etc

breach of contract, Misrepresentation, Breach of Duty, Fraudulent Concealment, Aiding & Abetting,

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 75,001.00
JURY DEMAND: ☐ Yes ☒ No

DATE 1/20/09

FOR OFFICE USE ONLY
RECEIPT # 159934   AMOUNT $350   1/22/09